## THE PEOPLE v. WILBUR FLYNN.

*Criminal law—Rape—Evidence—Instructions.*

1. One who aids and assists another in committing the crime of rape is guilty of the main offense.

2. The definition of a reasonable doubt, in language substantially like that used in *People v. Finley*, 38 Mich. 482, is approved.

3. It is competent for the prosecution to ask the complaining witness in a rape case whether she believed that the respondent intended to kill her from threats which she has testified they, or one of them in the presence of the other, made; also, whether the intercourse, which is admitted, but is claimed to have been voluntary on her part, caused her pain; also, why she did not struggle against one of the respondents when he subjected her to such intercourse.

4. The charge as set forth in the opinion is held to state the law applicable to the case correctly.

Error to Kalamazoo. (Buck, J.) Argued April 21, 1893. Decided June 30, 1893.

Respondent was convicted of the crime of rape, and sentenced to imprisonment in the State prison for seven years. Judgment affirmed. The facts are stated in the opinion.

*Volney H. Lockwood,* for respondent.

*A. A. Ellis,* Attorney General, and *George P. Hopkins,* Assistant Prosecuting Attorney, for the people.

HOOKER, C. J.    The respondent was convicted of the crime of rape.    The alleged victim, Lizzie Schroder, together with one Minnie Ebans, attended a dance together, where they met the respondent and one Lemuel Allen, who is impleaded with him.    The theory of the prosecution is that the young men induced these girls to permit them to take them to the girls' homes in a buggy, but that, instead of doing so, they went in another direction.    The Ebans girl jumped out of the buggy, and escaped, but the Schroder girl was forcibly taken to a secluded place, and subjected to sexual intercourse by both of the young men, under threats of personal violence.    The defense assert that the intercourse was voluntary.

Upon the trial, Minnie Ebans was sworn as a witness for the people.    She testified that she got out of the buggy, and went to a house, and that the last she knew of Lizzie she was "hollering" for help when she (Minnie) was getting out of the buggy.    "*Q. by Prosecuting Attorney*: That was after you got out of the buggy?    *A.*   Yes, sir. (Objected to by Mr. Lockwood as irrelevant and immaterial)."    The court committed no error in overruling this objection.    The fact was a part of the *res gestæ.*   The same may be said of the testimony in answer to the question, "Which way did the buggy go after you left?" This witness testified that she saw no more of the boys or the buggy that evening, but that when she reached home Lizzie was at the witness' house.    She was asked where she went before going home, and she stated that she was at police headquarters for about half an hour.    She was asked nothing about what she did there, nor did she attempt to state.    We see no error in permitting this testimony.    The conduct of both girls immediately after

the transaction might reasonably be the subject of scrutiny.

The respondent was subsequently confined in the jail, where the girls were taken by the sheriff, to whom Lizzie had stated that Flynn did not have intercourse with her. A conversation occurred there between the sheriff and the girls in the presence of Flynn. At this time Flynn stated to the sheriff that he had intercourse with the Schroder girl. The sheriff, who had been told by her that Flynn had not had intercourse with her, turned to her, and asked her if it was true, and she said it was. The sheriff then said, "Why didn't you tell me this yesterday?" to which she responded that she was ashamed to confess it to him. The sheriff then asked her if she consented, and she said she did, whereupon he replied, "Well, then you were perfectly willing that Mr. Flynn should have intercourse with you?" She said, "No, I wasn't." The Ebans girl then said, "Lizzie don't understand what you mean by consent." This last remark was objected to and stricken out. The sheriff then explained to her that if she consented she would be as guilty as Mr. Flynn, so far as the act was concerned, and then she said she did not consent; that she was not willing; it was against her will that they had intercourse with her. "Q. Did she say anything on that occasion, Mr. Dix, about the reason she permitted it?" Under objection the witness stated: "She then showed me the marks on her neck, where Mr. Allen had choked her, and thrown her down. She said she was afraid to refuse Mr. Flynn, for fear she would receive the same treatment, as he had threatened her previous to this. Flynn made no further remarks on it." Similar testimony was given by the Ebans girl. This testimony was objected to, for the reason that it was hearsay, and immaterial, and that the admission of Flynn that he had intercourse with the Schroder girl was not voluntary. The sheriff stated that the statement was voluntary, and there is nothing to

show that it was not. Flynn did not testify about the interview. It was therefore for the jury to say whether his statement was voluntary. It had no special significance, for Flynn admitted the intercourse upon the stand. The statements of Lizzie in the presence of Flynn were admissible, in connection with Flynn's failure to deny them. She stated the fact of the intercourse, which he had already admitted. She gave as a reason that she feared him because of his threats, which he did not deny. This failure to deny the charge of threats was a matter for the jury.

The court committed no error in permitting the witness Lizzie Schroder to testify, against the objection that she had disobeyed the order of the court. The record shows that she did not disobey the order. The remarks of the prosecutor to the court in opposition to the objection did not prejudice the respondent, for there is nothing upon which to base the presumption that the witness had been doing anything improper while in company with the other witnesses.

The witness Lizzie Schroder was asked, "Whether you believed that they intended to kill you." And again, "Will you state whether or not it [the intercourse] caused you pain?" And again, "I will ask you whether or not, prior to this occurrence, you had experienced what is known as 'monthly periods.'" And again, "State why you did not struggle against Mr. Flynn." It is plain that all of these questions were admissible. The one in relation to menstruation was in connection with her statement that she found blood upon her garments after the act.

This covers the objections to the rulings of the court upon the introduction of evidence.

Some questions are raised upon the charge. The court instructed the jury, in substance, that, if Flynn aided and

assisted Allen to commit rape upon this girl, he was guilty of the offense. That is undoubtedly the law.

The court gave the eighth request to charge offered by the prosecution, as follows:

" I further instruct you, gentlemen, as requested in the people's eighth request as modified: The jury are instructed that it was not necessary for the complaining witness to tell her mother at once of the alleged rape upon her; and if the jury believe from the evidence that the defendant is guilty of the crime charged in the information, and that she by reason of the threats made to her by her ravishers and the treatment that she had received was induced thereby to refrain from informing her mother of what had taken place, then the complaining witness would be excused from not communicating the knowledge of the injury to others.

" That is true, gentlemen. At the same time it is true that you may take into account, in determining the truth of Lizzie Schroder's story, the circumstance whether she did or did not make complaint of it afterwards, and how recently. You may take that into account in connection with all of the facts and circumstances of the case. If you find that she did not complain of it because nothing of the kind happened, why, then, of course you would so consider it. If you find that she made no complaint because of the feelings of terror and mortification induced by what had happened to her, then, of course, she would be excused for not making the complaint."

Also the tenth, as follows:

" If the jury find from all the evidence in the case that the respondent, Flynn, was acting in concert with his co-defendant, Allen, and that while they were so acting in concert and together either or both of them, by the use of threats and other conduct calculated to intimidate the complaining witness, and that such threats and other conduct resulted in placing complaining witness in fear of great bodily harm, and that by reason thereof the respondent had sexual intercourse with said complaining witness, the jury find that she did not resist by reason of the threats and other conduct referred to, and the fears engendered thereby, but that said intercourse was against her will,—against the will of the said complaining witness,— then you should convict the respondent.

"Before proceeding to instruct you further, gentlemen, on my own motion, I will give you certain instructions which have been verbally requested by counsel for the respondent to give you."

The jury were also instructed as follows, viz.:

"I am also requested by counsel to instruct you that, to constitute the crime of rape, force must be used to overcome resistance of the woman to the sexual act; and that where no force is used the crime is not rape, even though the intercourse is against the will of the woman with whom the intercourse is had. I so instruct you in connection with what has already been said to you upon that subject. * * * To authorize a conviction for rape the jury must believe that the offense was accomplished by force, and against the will of the woman; and that there was the utmost reluctance and resistance on her part, or that her will was so overcome by fear that she did not dare to resist. And in this case, if the jury find that sexual connection was had with the witness Lizzie Schroder, and that said Lizzie Schroder was unwilling to submit to such intercourse, but finally consented or yielded through mere weakness of will, without any threats being made, or without fear of consequences if she resisted, then the offense would not be rape. But if the jury find that sexual intercourse was had with said Lizzie Schroder, and that she did not willingly submit to such intercourse, but submitted because of threats made against her if she did not yield to such intercourse, and through fear and apprehension of dangerous consequences or great bodily harm, and that her mind was so overpowered by fear that she did not dare to resist, then the offense would be rape, although she may have made little or no physical resistance to such connection."

"I am also requested by counsel for respondent to instruct you that, if you find that the act of intercourse by consent could have produced the injury, then it does not follow that the act of intercourse was by force because of the injury. That would be true, gentlemen,—that, if the injury would have resulted from consent, then it would not follow that force was used because of the injury. You may, however, take in consideration the injury as one fact or circumstance tending to aid you in determining whether the intercourse was forcible or by consent."

"But if you do not find the respondent's statement with

reference to the intercourse to be true, you should then examine, consider, and determine whether such intercourse was by Lizzie Schroder's consent, or whether it was accomplished by so working upon her fears that she did not dare to resist; and, if the latter, what part or share the respondent had or took in the transaction. If, as you have already been told, she did not resist because she did not want to resist, and was not then under the influence of any fear of the consequences if she did resist, then the offense charged was not committed, and you should acquit the respondent. But if, on the contrary, you find that Allen and respondent, acting in concert, took the girl Lizzie Schroder by force to the place where the intercourse took place, and there, by means of threats of great bodily harm, so overcame her will that she did not dare to resist for fear of the consequences if she resisted, and then and there had carnal intercourse with her, while she was under the influence of such fear, and that the respondent as well as Allen took part in every step and stage of the transaction, then the respondent should be convicted.

"It is claimed by the people, and admitted by. the respondent, that both Flynn and Allen had intercourse with Lizzie Schroder on the occasion referred to in the information and in the testimony in the case. As you have already been instructed, if a rape was committed by Allen, as charged in the information, and the respondent knowingly and purposely assisted Allen in the commission of such rape, then the respondent as well as Allen would be guilty of the offense, without regard to the fact of the defendant having intercourse with her. If, however, you should find that Allen did not commit a rape on the witness Lizzie Schroder, then the defendant should not be convicted. Or, if you find that Allen did commit a rape on the witness Lizzie Schroder, but that respondent took no part in such offense in any way, either by making threats or assisting Allen in forcibly taking the girl to the place where the rape was committed, with the intent that she should be forcibly ravished, or in any other of the ways mentioned in these instructions, then the respondent should be acquitted. But if you find that the respondent as well as Allen made threats against the girl Lizzie Schroder, and that on such threats she was so put in fear of great bodily harm that she did not dare to make resistance to either Allen or the respondent for fear of the consequences if she resisted, and that while she was under the influence of such

fear of great bodily harm the respondent had intercourse with her, then the respondent should be convicted.

"In determining what was the character of the intercourse which is alleged to have taken place between Allen and Lizzie Schroder and between respondent and Lizzie Schroder, and whether such intercourse amounted to rape or not, and in deciding what share respondent took in the affair, you should, of course, take into account all of the evidence in the case, and consider the testimony of each witness as to any fact in the light of all the surrounding circumstances, and in the light of all the other evidence in the case, giving to each piece of testimony just such weight as you think it is entitled to, and then respond to the convictions which the evidence in the case taken as a whole makes on your minds."

Several exceptions were taken to the foregoing quotations from the charge, but, taken together, these instructions state the law applicable to the case correctly.

Exception was also taken to the explanation of a "reasonable doubt." The language used was substantially the same as that approved in the case of *People v. Finley*, 38 Mich. 482.

We find no error in the record, and the judgment must therefore be affirmed.

The other Justices concurred.