### JONES v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted February 6, 1923. Decided May 7, 1923.)

No. 3880.

1. Criminal law ⬅═829(16)—Refusal of requested instruction on effect of character evidence held error.

In a prosecution for larceny of an automobile and tires, where defendant had given an explanation consistent with innocence of all the evidence against him, except the testimony of an accomplice, which defendant denied, and had offered evidence of his own good character, it was error to refuse a requested instruction that the circumstances may be such that an established reputation for good character would alone create a reasonable doubt of guilt, although without it the other evidence would be convincing; that instruction not being covered by a statement in the charge that the fact of defendant's good reputation, if that had been established, should be considered along with the other evidence of the case.

2. Indictment and information ⬅═180—Variance in middle initial is not error.

The variance between an indictment for larceny, charging that the owner of the stolen automobile was Alfred B. Robbins, and proof that his correct name was Alfred P. Robbins, was not prejudicial to defendant, and did not constitute error under Rev. St. § 1025 (Comp. St. § 1691).

⬅═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the Supreme Court of the District of Columbia.

Douglas C. Jones was convicted of larceny of an automobile and some tires, and he appeals. Reversed and remanded.

T. Morris Wampler, of Washington, D. C., for appellant.

Peyton Gordon and J. J. O'Leary, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. The defendant, now the appellant, was indicted jointly with one Roberts upon the charge of stealing an automobile and certain tires, tubes, and a battery belonging to it. The defendant pleaded not guilty and went to trial. Roberts, his codefendant, pleaded guilty and became a witness for the prosecution.

The first witness at the trial was the owner of the automobile, who testified in substance that it was stolen on a certain evening in February, 1920, when he had left it parked upon a street in the city of Washington, and that when it was recovered the tires, tubes, and battery were missing. The next witness was Roberts, who testified in substance that on the evening in question he and the defendant were together in a car which the witness had borrowed from a man named Patterson; that they were touring about, looking for a car to steal, when they noticed the one in question, and saw that it was equipped with new tires; that they then decided to steal the tires; that accordingly the witness entered the car and drove it over to Arlington, leaving the defendant to follow in the borrowed car; that after meeting there according to their agreement they took the tires, tubes, and battery from the car, and drove away, leaving it standing in or near the Arlington road; that they left the stolen articles in a garage that night; that the next morning the defendant met the witness at his hotel, and, after putting two of the stolen tires on the borrowed car, they sold the other three tires and the battery at Baum's second-hand shop; that defendant transacted the sale. The witness admitted that he had pleaded guilty to another indictment for grand larceny in the District, as well as this one. No punishment had been imposed upon him, his case having been referred to the probation officers.

The next witness was Baum, who testified that he was in the automobile business; that in the early part of March 1920, he bought some tires and a battery from the defendant and Roberts, "and another young fellow"; that they were together and he could not recall which one he had paid the money to; that they were at his place on two occasions; that the witness had known the defendant before that time but had not known Roberts; that when the defendant came to his place of business he gave his right name and also introduced Roberts to him under his right name of Roberts. The tires were identified as the stolen ones.

Several police officers testified to finding the automobile near the road in Virginia, and Patterson testified that he had loaned Roberts

his car, and given him the privilege of using his garage, at and about the time in question.

The defendant testified, stating that he was in the automobile business, denying in substance that he was with Roberts upon the evening in question, or had any part at all in taking the car or other property, or that he was present when they were stolen; that he had known Roberts for some time and was told by him that he had some tires for sale; some old ones which he did not need upon his Studebaker; that the defendant told him of Baum as a man who would buy them, and defendant at Robert's request met him there and introduced him to Baum; that Roberts then sold a battery and two or three tires which he had brought with him in a car; that Roberts did not tell the defendant where he got the tires and the battery, but defendant supposed they came off of his car, the defendant, however, at another time saying that Roberts told him that they had come off of the Patterson car; that no money or anything of value was given to defendant at Baum's shop, but the money was given to Roberts.

Thereupon George O. Talbert was called as a witness by defendant and testified as follows:

"That he is sales manager for the John Hill Company handling batteries, lives in Washington, and has lived here for 20 years; has known defendant for about 10 years; knows other people in the community who know him, many of them; knows his general reputation for honesty and integrity and fair dealing, and that it is of the best; that the witness has never heard anyone say anything against him."

[1] The defendant's counsel in due time moved the court to give the following instruction to the jury, to wit:

"The jury are instructed that the circumstances of a case may be such that an established reputation for good character would alone create a reasonable doubt, although without it the other evidence would be convincing."

It may be noted that this language is quoted verbatim from the opinion of the Supreme Court of the United States in Edgington v. United States, 164 U. S. 361, 366, 17 Sup. Ct. 72, 41 L. Ed. 467; nevertheless the court refused to give the instruction as requested, but in the general charge instructed the jury upon the same subject as follows, to wit:

"Another thing, before saying what I want to say finally in the matter, there is testimony here that the defendant Jones bears a good reputation in the community for honesty, I believe it was said. You heard the testimony, and if you are satisfied that he bears such a reputation he should have the benefit of that fact as circumstance or fact in the case, together with the other facts and circumstances in the case, weighing them together and helping you to reach a determination as to whether or not he is guilty."

The defendant excepted to the court's action in this behalf. We think that the court erred in refusing to give the instruction as requested, notwithstanding that others upon the same subject were given in the general charge. The instruction as requested explained the subject in specific and concrete terms, whereas those contained in the general charge simply informed the jury in effect that they should consider such testimony together with the other testimony in (the) case

in order to reach their verdict. In State v. Brown, 39 Utah, 140, 115 Pac. 994, Ann. Cas. 1913E, 1, the court said:

"To tell the jury that they should consider good character in connection with all the other evidence in the case is, as stated by the California courts (People v. Bell, 49 Cal. 485), not telling them anything beyond letting in the evidence. * * * A mere charge which admonishes the jury to consider good character in connection with all the other evidence, and which directs them that if, on a consideration of all of it, including good character, they entertain a reasonable doubt of guilt, to acquit the accused, is not charging the jury on the rules or principles of law applicable to evidence of good character, or stating the object or purpose for which it may be considered, its sufficiency as evidence to support a reasonable doubt of guilt, or the legal effect which the jury in their judgment may give to it."

This subject was so fully discussed by Mr. Justice Van Orsdel, speaking for this court, in the recent case of Egan v. United States, 52 App. D. C. 384, 287 Fed. 958, handed down on March 5, 1923, that it is unnecessary to dwell at length upon it here. Our present conclusion indeed simply follows as a corollary from the opinion in that case, to which we make special reference since many other observations contained therein would be equally applicable here.

It was peculiarly important in the present case to have the jury understand, in a clear and unmistakable way, just what force and effect they were entitled to give to the testimony in support of the defendant's general reputation for honesty. The testimony relating to the res gestae was meager. Roberts testified in effect that he and the defendant had stolen the property in question and disposed of it to Baum. The defendant in effect denied these statements. Baum's testimony tended in some degree to corroborate Roberts' statement, but the defendant met it with an explanation which was consistent with innocence upon his part. Roberts testified as an accomplice, and had pleaded guilty to another similar crime, but had not yet been punished for either of them, being in the hands of the probation officers. Under such circumstances the general reputation of the defendant for honesty, when established by uncontradicted testimony, might well become the turning point in the case in the estimation of the jury. He was therefore entitled to specific instructions upon that subject. It may be noted also that the defendant as a witness was not cross-examined by way of impeachment.

[2] The appellant presents other assignments of error which we need not now discuss, since we hold that the conviction should be reversed upon the ground already set out. One point, however, should be passed upon, and that is a question of variance between the indictment and the proofs. In the indictment the owner of the automobile in question was named Alfred B. Robbins, whereas the evidence disclosed that his correct name was Alfred P. Robbins; his full name being Alfred Perkins Robbins. We think that this variance was not prejudicial to the rights of the defendant, nor did it constitute error in the case. Rev. St. U. S. § 1025 (Comp. St. § 1691); Hoke v. United States, 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905; Bennett v. United States, 227 U. S. 333, 33 Sup. Ct. 288, 57 L. Ed. 531; People v. Leong Quong, 60 Cal.

107; Williams v. United States, 3 App. D. C. 335; Kemp v. United States, 41 App. D. C. 539, 51 L. R. A. (N. S.) 825.

Reversed and remanded for a new trial.