## UNITED STATES v. NEWMAN.

### No. 393.

Circuit Court of Appeals, Second Circuit.

June 26, 1944.

Herbert Zelenko, of New York City (Gilbert S. Rosenthal, of New York City, of counsel), for appellant.

Thomas K. Fisher, Asst. U. S. Atty., and James B. M. McNally, U. S. Atty., both of New York City, for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

PER CURIAM.

Newman, the appellant, was convicted of sending copies of obscene magazines through the mails and by express, §§ 334 and 396 of Title 18, U.S.C.A. He does not assert that there was not enough evidence to support the verdict against him, but he does complain: (1) that the judge's charge was confusing; (2) that he refused to give "essential" instructions; and (3) that he never ruled that the magazines were obscene "as a matter of law," before submitting the case to the jury. The facts were as follows. A postal inspector mailed a letter to Newman, asking the prices of certain magazines, using "Edison's Book Shop," of Albertville, Alabama, as an assumed name. In response Newman shipped to him four copies of the magazines which are the subject of the charge. They were wholly erotic, both in text and pictures; and could have had no other than a salacious appeal, no matter into whose hands they fell. At the close of the evidence, the judge overruled a motion to direct a verdict of acquittal for insufficiency of evidence; and that neces-

sarily involved a decision that the jury might find the magazines obscene. This disposes of the third alleged error. In his charge to the jury the judge described the test of obscenity as follows: "The standard and test must be the likelihood that the work or literature contained therein will so much arouse the salacity of the reader to whom it is sent as to outweigh any literary, scientific, or other merits it may have, in the minds of the readers it is likely to reach." The accused's objection to this is that it was inconsistent and confusing, because it told the jury to compare the salacity aroused in one reader with the literary merits appreciated by other readers. The only exception taken to this part of the charge was that the judge had not given "the comprehensive test of obscenity." When he repeated the same language to the jury after they had retired and had returned for further instructions, an exception was again taken to the failure to charge "the tests that were to be applied in reaching a decision of the question of obscenity." At no time was it suggested that the charge was confusing for the reason now urged. The accused did indeed submit, and the judge denied, ten requests; all of which related to the test of obscenity; but these added nothing of importance to the colloquial charge, and may be disregarded. The charge as to reasonable doubt was adequate, and, although the jury was not told that the accused's failure to take the stand was not to be taken against him, the omission was at his own request.

 It is true that, if taken literally, the charge as to obscenity was inconsistent; it called for a comparison between the feeling aroused in the reader to whom the work was sent, and its literary merits in the mind of readers whom it was likely to reach. However, although that was, strictly speaking, nonsense, its purport was plain enough. Obviously no comparison between salacity and literary merit could be made by different readers; and it was apparent what was intended. At any rate, if the accused had feared that the verbal slip was prejudicial to him, he should have called it to the judge's attention; it was not enough to challenge the test in general terms. Newman also appears to complain that, although the magazines were sent out for general distribution, the judge did not distinguish between those who might read them for their merit, and those who might wish them for their obscenity. However, as we have said, the magazines were obscene and only obscene, and it was not necessary to caution the jury that in some hands they might not be obscene. Furthermore, none of the ten requests as to obscenity raised this distinction.

 There remains only the supposed failure to charge the jury as to four "essential questions of law": (a) failure to charge the presumption of innocence; (b) that the overruling of the motions to dismiss did not indicate any opinion of the judge upon the facts; (c) that an indictment was only an accusation; and (d) that the burden of proof was always upon the prosecution. The accused made no requests of the judge to charge any of these; and as we have said, the charge as to reasonable doubt was adequate. It is true that in Kreiner v. United States, 2 Cir., 11 F.2d 722, 731, we said that "The court should instruct on all essential questions of law involved in the case, whether requested or not," but we held that an instruction upon "character evidence" was not within that rule. In Kinard v. United States, 68 App.D.C. 250, 96 F.2d 522, 524, although this language was repeated, that court also held that the failure to charge on character evidence, when not requested, was not reversible error. While we do not wish to be understood as again affirming the general statement made in Kreiner v. United States, supra, we will assume for argument that there may be "essential questions of law," as to which the judge must charge the jury whether he be asked to do so or not. Be that as it may, only two of the four questions could possibly be regarded as "essential" within such a doctrine: the presumption of innocence and the prosecution's burden of proof. The charge as to reasonable doubt certainly covered the question as to the burden of proof; and, if there still remains some mystic difference between the presumption of innocence and the burden of proof, it is at least impalpable enough to require an accused to bring the omission to the judge's attention.

Conviction affirmed.